FILED

2012 Dec-19  PM 02:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **CATHERINE FITCH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 4:11-CV-4246-VEH** |
| | ) | |
| **UNUM LIFE INSURANCE** | ) | |
| **COMPANY OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

**THIS CAUSE** is before the court on the following motions: Plaintiff's

Motion for Entry of Judgment (Doc. 15); Defendant's Motion for Summary

Judgment (Doc. 17); Defendant's Motion to Dismiss Plaintiff's Second Amended

Complaint (Doc. 41); Defendant's Motion to Strike Plaintiff's Exhibits 1, 4, and

22 and Pages 45-47 of Her Response (Doc. 50) (referencing Doc. 44); Plaintiff's

Motion for Judgment against Unum (Doc. 59); Defendant's Motion for Judgment

on the Pleadings (Doc. 61); Plaintiff's Motion to Compel the Production of

Communications with Counsel (Doc. 64); and Defendant's Motion to Strike

certain exhibits submitted in support of Doc. 59 (Doc. 68).

However, the court only need decide two of these motions—Defendant's

Motion for Summary Judgment (Doc. 17) and Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 41)—to dispose of all the claims in this case. Therefore, this Memorandum Opinion addresses only these motions. This memorandum opinion will proceed in three steps. First, it will set forth the relevant facts and procedural history. Second, it will set forth the legal standards applicable to Plaintiff's claims. Finally, this opinion will explain why Plaintiff's claims fail under the relevant legal standard.

## I.    BACKGROUND

### A.    Facts

The facts of this case are relatively straightforward. Adesta, LLC maintains a group life insurance policy (the "Plan") for its employees. It purchased the Plan from the Defendant, the Unum Life Insurance Company of America ("Unum"). (Doc. 17-2.) The Plan provides life insurance for covered employees and, therefore, is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA"). *See* 29 U.S.C. § 1002(1).

Robert Fitch worked for Adesta, LLC for thirteen years. In 2008, Robert was diagnosed with cancer. He continued to work for Adesta until April 2009, when Adesta fired him. At the time, Robert was not expected to live long.

Before he left his job, Robert emailed Carol McLaughlin, an Adesta

employee, and asked for the form needed to convert his group life insurance policy to an individual policy.  (Doc. 15-3.)  In his email, Robert asked McLaughlin to call him or to email him at his <u>personal</u> email address.   (*Id.*) (emphasis supplied) On April 27, 2009, McLaughlin sent an email to Robert's <u>work</u> address.  The email said that McLaughlin had sent Robert a portability package, which concerns the continuation of an employee's life insurance upon retirement, not termination. Unfortunately, by that time, Robert no longer had access to his work email.  It is not seriously disputed that Robert never received McLaughlin's April 27, 2009 email.  And, Robert's wife alleges that he never received the portability package from Adesta.  For present purposes, the court accepts this allegation as true.

When Adesta terminated Robert on April 24, 2009, it gave him a severance package worth eight weeks of his salary.   The parties do not seriously dispute that Adesta withheld certain taxes from Robert's severance package.  The parties disagree whether Adesta also promised to, and in fact did, deduct Robert's life insurance premiums.

Six weeks after Adesta fired him and before his severance package ran out, Robert died.  Five days later, his widow, Plaintiff Catherine Fitch ("Fitch"), requested Robert's life insurance from Unum.  (Doc. 38-1 at 18.)  After reviewing their file, Unum denied Fitch's claim.  Unum explained that, under the terms of the

Plan, Robert's coverage ended on April 24, 2009.  The Plan allowed Robert thirty-one days in which to convert his group life policy to an individual policy.  To do that, Robert had to submit a conversion application.  Unum then said, "No application for conversion was received and the 31 day conversion period ended on May 25, 2009." (Doc. 15-4 at 2.)  Thus, Unum concluded that Robert had no coverage on the day he died, June 10, 2009.

Fitch appealed Unum's decision without success.  She then brought this action against both Adesta and Unum.

## B.    Procedural History

The procedural history of this case is complicated.  In her first Amended Complaint, Fitch asserted a breach of fiduciary duty claim against Adesta and a claim for Robert's life insurance benefits against Unum.  (*See* Doc. 9.)  In February 2012, Fitch moved for partial summary judgment regarding the standard of review for these claims.  (Doc. 14.)  Fitch contended that de novo review is appropriate rather than the arbitrary and capricious standard.

Shortly thereafter, Fitch's also moved for summary judgment against Unum.[1]  (Doc. 15.)  In its response to Fitch's motion, Unum asserted a cross-

---

[1]  Though this motion does not say it is brought pursuant to Fed. R. Civ. P. 56, it includes evidentiary submissions.  Therefore, the court will construe it as a motion for summary judgment.

4

motion for summary judgment.  (Doc. 17.)  Additionally, Unum later moved to strike some of the evidence Fitch submitted with her motion for summary judgment.  The details of these other motions are not relevant here, but the flurry of motions caused the court to hold a hearing on May 17, 2012.  After that hearing, the court decided that the arbitrary and capricious standard of review will apply to Fitch's claims.  (*See* Doc. 35.)

At the hearing, the court also granted Fitch's request to amend her complaint, and she filed her Second Amended Complaint the next day.  The Second Amended Complaint adds five additional counts against Unum: (1) Contract Reformation; (2) Equitable Estoppel; (3) Ambiguity; (4) Request for Conversion; and (5) Joint Fiduciary Liability.  (Doc. 34.)  On June 4, 2012, Unum moved to dismiss these counts under Federal Rule of Civil Procedure 12(b)(6).  (Doc. 41.)  Fitch responded to Unum's Motion to Dismiss (Doc. 44), and attached evidentiary submissions.   After Unum replied (Doc. 49), it again moved to strike several of these submissions.  (*See* Doc. 50.)

Then, in August 2012, Fitch moved for summary judgment against Adesta on her fiduciary duty claim.  Shortly thereafter, Adesta and Fitch settled their dispute and the court dismissed Adesta from this action, *pro tanto*.  (Doc. 57.)[2]

_____

[2]  This settlement fully resolved Fitch's claims in Count I of her Amended Complaint.

5

But, the cantankerous dispute between Fitch and Unum continued.  Fitch filed a new Motion for Judgment against Unum on August 29, 2012.  (Doc. 59.) The next day, Unum moved for Judgment on the Pleadings.[3]  (Doc. 61.)

Thereafter, the Plaintiff moved to compel certain communications between Unum and its counsel (Doc. 64) and Unum, again, moved to strike several of Fitch's evidentiary submissions.  (Doc. 68, 76.)

### C.     Summary of Remaining Claims and their Procedural Posture

Fitch has six claims remaining in this case, all against Unum.  The court summarizes each claim here.  Count II asserts a claim for Robert's life insurance benefits under the Plan. Count III asks the court to reform the Plan documents and enforce them as reformed.  Count IV asserts that Unum is equitably estopped from denying benefits.  Count V asserts that the Plan is ambiguous and must be construed against Unum.  Count VI asserts that Fitch has a right to request a conversion of Robert's group life insurance policy.  And, Count VII asserts that Unum is jointly liable for Adesta's breach of its fiduciary duties under the Plan.

Count II is before the court on Unum's Motion for Summary Judgment. The remaining counts (III–VII) are before the court on Unum's Motion to Dismiss

---

[3]  Although Unum filed a new motion, the motion simply incorporates by reference Unum's arguments from its Motion for Summary Judgment (Doc. 17) and its Motion to Dismiss (Doc. 41).

(Doc. 41).  The court will address each claim in turn.  But first, the court will set forth the applicable legal standards.

## II.    LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R .Civ. P. 56(a).  "All reasonable doubts about the facts" and "all justifiable inferences" are resolved in favor of the nonmoving party.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).[4]  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  The substantive law will identify which facts are material and which are irrelevant.  *Id.*

### B.    Standard for ERISA Benefit Claims

---

[4] Rule 56 was amended in 2010. The Advisory Committee was careful to note, however, that "[t]he standard for granting summary judgment remains unchanged."  Fed. R. Civ. P. 56 advisory committee's note to 2010 amendments.  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

"ERISA itself provides no standard for courts reviewing the benefits decisions of plan administrators or fiduciaries." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011), *cert. denied*, 132 S. Ct. 849 (2011) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108–09, 109 S.Ct. 948, 953 (1989)).  The Eleventh Circuit has adopted a six-step analytical framework for the review of claims seeking ERISA benefits:

1)  Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2)  If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3)  If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4)  If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5)  If there is no conflict, then end the inquiry and affirm the decision.

(6)  If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship*, 644 F.3d at 1355.  Review of a plan administrator's decision

8

regarding a beneficiary's eligibility for benefits "is limited to consideration of the material available to the administrator at the time it made its decision." *Id.* at 1354 (citation omitted).

### C.   Motion to Dismiss

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6).   The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957), *abrogated by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955  (2007); *see also* Fed. R. Civ. P. 8(a).

While a plaintiff must provide the grounds of her entitlement to relief, Rule 8 does not mandate the inclusion of detailed factual allegations within a complaint. *Twombly*, 550 U.S. at 555 (citing *Conley*, 355 U.S. at 47, 78 S. Ct. 103).   However, at   the   same   time,   "it   demands   more   than   an   unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).   "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). The court therefore "accept[s] as true the facts set forth in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 556 U.S. at 680; 129 S. Ct. at 1950–51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted)

## III.   ANALYSIS

### A.   Unum Had Reasonable Grounds for Its Decision to Deny Mrs. Fitch's Claim

With the applicable legal standards in mind, the court first turns to

Count II—Fitch's claim for life insurance benefits under the Plan.[5]   The court has already determined that it will review Unum's decision to deny Fitch's claim under the arbitrary and capricious standard.  (Doc. 35.)  As such, the court will proceed directly to Step Three of the Eleventh Circuit's six-step framework.

Like all ERISA plans, the Plan was "established [by] and maintained [under] a written instrument."  29 U.S.C. § 1102(a)(1).  ERISA requires that a fiduciary "shall discharge his duties . . . in accordance with the documents and instruments governing the plan."  29 U.S.C. § 1104.  The significance of a plan's written terms cannot be understated.  As the Supreme Court has said, "A written plan is . . . required [so] that every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83–84, 115 S. Ct. 1223, 1230–31(1995) (citation omitted); *see also* Doc. 15-2 at 18 (stating the certificate of coverage "tells you . . . the coverage for which you may be entitled").[6]

Additionally, ERISA requires each plan to have a named fiduciary.  29 U.S.C. § 1102(a).  The named fiduciary (also called the plan administrator) must

_____

[5]  This claim is authorized by 29 U.S.C. § 1132(a)(1)(B).

[6]  Though the court cites to the Certificate of Coverage Fitch submitted with her first Motion for Judgment Against Unum (Doc. 15), the applicable plan language actually appears at several places in the record.  (*See* Doc. 17-2; Doc. 44-2).

discharge his duties "solely in the interest of the participants and beneficiaries" and "in accordance with the documents and instruments governing the plan."  29 U.S.C. 1104(a)(1).  A key duty of a plan administrator is to determine a beneficiary's eligibility for benefits under the plan.  29 U.S.C. §§ 1102(b)(4) & 1104(a).  The plan administrator may properly delegate this duty to another person or entity.  *See* 29 U.S.C. 1105(c).

Under the Plan, Adesta is the plan administrator.  (Doc. 15-2 at 48; Doc. 44 at 17.)  Regarding Adesta's responsibility to pay or deny claims, the Plan delegates this duty to Unum.  (Doc. 15-2 at 42, 48.)  Moreover, the Plan grants Unum discretion in deciding claims.  (Doc. 15-2 at 48.)  Therefore, Unum is a fiduciary for the limited purpose of paying or denying claims.  *See* 29 U.S.C. 1002(21).  And, as such, Unum has a duty to follow the terms of the Plan in deciding Fitch's claim.

The Plan provides that "[t]he amount [of benefits] you . . . [will] receive[] is based on the amount of coverage in effect just prior to the date of your death."  (Doc. 15-2 at 8.)  It is undisputed that Robert was covered by the Plan while he worked for Adesta.  Thus, the relevant question is, did Robert's coverage end before his death on June 10, 2009?

Regarding this question, the Plan provides:

12

**WHEN DOES YOUR COVERAGE END?**
Your coverage under the Summary of Benefits or a plan ends on the earliest of:

. . .

•       the last day you are in active employment unless continued due to a covered layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage.

Unum will provide coverage for a payable claim which occurs while you are covered under the Summary of Benefits or plan.

(Doc. 15-2 at 20.)  "Active employment" means that the employee is "working for [the] Employer for earnings that are paid regularly and that [he is] performing the material and substantial duties of [his] regular occupation."  It is undisputed that Robert last worked for Adesta on April 24, 2009.  After that date, he was not performing the material and substantial duties of his regular occupation. Therefore, Robert's last date of active employment, and the date his coverage ended, was April 24, 2009.

The Plan allows for two exceptions to the last-date-of-active-employment rule.  First, an employee who is not actively employed remains covered if he is "continued due to a covered layoff or leave of absence."  (Doc. 15-2 at 20.) "Layoff or Leave of Absence" means the employee is "temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer."  (Doc. 15-2 at 50.)  Robert does not qualify for this

13

exception because his termination was permanent, not temporary.

Second, an employee remains covered if he is "continued . . . due to an injury or sickness, as described in this certificate of coverage." (Doc. 15-2 at 20.) Although Robert was suffering from sickness as defined by the Plan, he was not "continued" by Adesta. Instead, Adesta permanently terminated Robert. Therefore, Robert does not qualify for either exception to the last-date-of-active-employment rule.

Nonetheless, the Plan offered Robert the opportunity to continue his life insurance coverage through conversion. (Doc. 15-2 at 28.) Regarding the conversion privilege, the Plan provides:

> **WHAT INSURANCE IS AVAILABLE WHEN COVERAGE ENDS?**
> **(Conversion Privilege)**
> When coverage ends under the plan, you . . . can convert your coverage[] to [an] individual life polic[y], without evidence of insurability. . . .
>
> You . . . <u>must apply for individual life insurance under this life conversion privilege</u> and pay the first premium within 31 days after the date:
> •   your employment terminates; or
> •   you . . . no longer are eligible to participate in the coverage of the plan

(Doc. 15-2 at 28) (emphasis added). This provision establishes <u>two</u> requirements to convert a policy: (1) submitting an application for conversion within thirty-one (31) days of coverage ending; <u>and</u> (2) paying the first premium within that thirty-

one (31) day period.

As determined above, Robert's employment ended on April 24, 2009.  Thus, the thirty-one (31) day period began on that day and ended on May 25, 2009.  The parties hotly dispute whether Robert paid the first premium during this period.  Fitch contends Adesta deducted the premium from her husband's severance pay.  Unum contends that Adesta made no such deductions or, alternatively, that Fitch has not proved that Adesta made the deductions.  The court need not  resolve this issue.

It is undisputed that Robert did not submit a conversion application before May 25, 2009.  Therefore, Robert failed to complete an essential requirement for the conversion of his group life insurance policy.  The Plan is clear that an employee must submit an application for conversion during the thirty-one (31) day conversion period.  (Doc. 15-2 at 28.)  Further, the Plan is clear that the employee must complete and submit the application to Unum.  (Doc. 15-2 at 29.)  The relevant Plan provision states:

> **APPLYING FOR CONVERSION**
> Ask your Employer for a conversion application form which includes cost information.
>
> When you complete the application, send it with the first premium amount to:

Unum – Conversion Unit
*******************
Portland, Maine *****

(Doc. 15-2 at 29.)  Despite his clear intention to convert his group life insurance policy, Robert failed to take a necessary step to effect the conversion of his policy. Thus, under the terms of the Plan, his coverage ended on May 25, 2009.

More important, even if the court's reading of the Plan is erroneous, the Plan clearly vests Unum with discretion to interpret the terms of the Plan.  (Doc. 35.)  Thus, the court can only reverse Unum's decision if it was an arbitrary and capricious interpretation of the Plan.  Because the court concludes that Unum's decision was correct under the terms of the Plan, the court certainly cannot conclude that Unum's decision was arbitrary and capricious.

But, the inquiry does not end there.  The court must still determine whether Unum operated under a conflict of interest and, if it did, weigh that conflict of interest as a factor in determining whether Unum's decision was arbitrary and capricious.  A fiduciary acts under a conflict of interest when it both decides a beneficiary's eligibility for benefits and pays those benefits out of its own pocket. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112, 128 S. Ct. 2343, 2348 (2008).  In this case, Unum is clearly deciding Fitch's claim and would have paid her claim from its own funds.  Thus, Unum is acting under a conflict of interest.

16

After weighing this factor, the court still concludes that Unum's decision to deny Fitch's claim was not arbitrary and capricious.  Unum strictly applied the plain terms of the plan.  This strict application yielded an unfortunate result—i.e., Fitch will not receive the life insurance her husband clearly intended to leave her.  Nonetheless, Unum's decision is in line with ERISA's emphasis on enforcing a plan's terms as written.

At this point, the court will address a separate argument.  In her Brief in Opposition to Unum's Motion to Dismiss (Doc. 44), Fitch contends, without citation to authority, that an ERISA beneficiary is entitled to benefits so long as he substantially complies with the terms of the plan.  (Doc. 44 at 29–30.)  The court rejects this argument because it would defeat ERISA's requirement of a written plan.  Ordinarily, a court must strictly enforce the terms of an ERISA plan.  *See* 29 U.S.C. § 1132(a)(1)(A) (stating that a beneficiary may sue "to recover benefits due to him <u>under the terms of his plan</u>, to enforce his rights <u>under the terms of the plan</u>, or to clarify his rights to future benefits <u>under the terms of the plan</u>") (emphasis added); 29 U.S.C. § 1104(a)(1)(D); *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 552 (7th Cir. 1997) ("ERISA instructs courts to enforce strictly the terms of plans . . . .").  If substantial compliance is enough to entitle a beneficiary to payment, then a beneficiary may, on his own, alter the plain terms of

17

the Plan.  This result is wholly inconsistent with the purpose of the written plan requirement.

Moreover, even courts that have applied the doctrine of substantial compliance in the ERISA context would not use this doctrine to establish a beneficiary's entitlement to benefits.  *See, e.g.*, *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 565 (4th Cir. 1994) (recognizing that a participant's failure to change the beneficiary under the plan is a situation different from determining the beneficiary's entitlement to benefits, and allowing the doctrine of substantial compliance in that unique situation).

Finally, Robert's clear intent to convert his group life insurance policy does not make Unum's denial arbitrary and capricious.  Unum merely enforced the terms of the Plan as written.

Because Unum's decision to deny Fitch's claim was not arbitrary and capricious, the court finds that Unum's Motion for Summary Judgment (Doc. 17) on Fitch's claim for benefits (Count II) is due to be **GRANTED**.  The court will now turn to Fitch's remaining claims.

### B.   Fitch's Other Counts Fail to State a Claim for Which the Court Can Grant Relief

As an initial matter, the court must address whether Fitch's other claims are

cognizable under ERISA.  ERISA's civil enforcement provisions are a

comprehensive and deliberately crafted regulatory scheme.  *See Pilot Life Ins. Co.*

*v. Dedeaux*, 481 U.S. 41, 54, 107 S. Ct. 1549, 1556–57 (1987).  Thus, a

beneficiary cannot obtain relief under ERISA unless the statute expressly

authorizes it.  *See id.* at 57, at 1558.  ERISA authorizes a court to grant

"appropriate equitable relief."  29 U.S.C. § 1132(a)(3).  However, the Supreme

Court, in *Varity Corp. v. Howe*, 516 U.S. 489, 515, 116 S. Ct. 1065, 1079 (1995),

said that a claim for benefits under § 1132(a)(1)(B) is "adequate relief for [a]

beneficiary's injury" such that an equitable claim for the payment of benefits will

often be inappropriate.  Despite this pronouncement, traditional equitable

remedies—ones previously available only in courts of equity—are authorized by,

and appropriate under, 29 U.S.C. § 1132(a)(3).  *See CIGNA Corp. v. Amara*, 131

S. Ct. 1866, 1878 (2011).

Unum contends that Counts III through VII are merely equitable claims for

Robert's life insurance and, therefore, are barred by *Varity*.  The court agrees with

Unum that, to the extent that Fitch merely seeks the payment of Robert's life

insurance benefits under an equitable theory, her claim is barred by *Varity*.  But, it

appears to the court that Fitch's claims are not necessarily claims for benefits.  For

instance, Fitch seeks contract reformation.  This traditional equitable remedy

allows a court to rewrite the terms of a written contract so that it conforms to the parties' actual agreement. *See generally* Am. Jur. 2d Reformation of Instruments § 1. The court may then enforce the reformed agreement as written. *See CIGNA*, 131 S. Ct. at 1879. The Supreme Court has suggested that such relief would be "appropriate equitable relief" under ERISA. *See id.* Thus, this court will consider the merits of Counts III through VII. Because Fitch's equitable claims involve facts outside the administrative record, the court does not consider itself bound by the *Blankenship* benefits-claim-review framework. Nonetheless, Fitch must still allege sufficient facts showing her entitlement to equitable relief. Because these counts are before the court on Unum's Motion to Dismiss, the court accepts all Fitch's alleged facts as true and draws all reasonable inferences in her favor.

### 1.   Fitch Has Not Shown that Contract Reformation is Appropriate

Contract reformation is available when (1) a valid contract exists, (2) and, because of a mutual mistake between the parties or a unilateral mistake by the party seeking reformation coupled with the inequitable conduct of the other party, the contract is not an expression of the parties' true agreement. *See* Am. Jur. 2d Reformation of Instruments § 1. Fitch's claim for reformation fails because Fitch's Second Amended Complaint does not allege facts suggesting that Robert

was mistaken about the terms of the Plan.[7]   In fact, Robert's email to McLaughlin shows that he knew he had to submit a form to convert his group policy to an individual one.

Additionally, the Second Amended Complaint does not allege facts showing Unum engaged in inequitable conduct.  Fitch alleges that Adesta prevented Robert from converting his policy because McLaughlin failed to send him a conversion application.  Fitch further alleges that McLaughlin was acting as an agent of Unum when she failed to send the conversion application.  The court rejects this second contention.  The Plan clearly designates Adesta as the plan administrator.  (Doc. 15-2 at 42.)  Unum's only responsibility under the plan is to examine claims and pay the meritorious ones.  (See Doc. 15-2 at 42, 48.)  The Plan explicitly provides that Adesta shall not be considered an agent of Unum.  (Doc. 15-2 at 25.)   And, Robert's Certificate of Coverage directs participants to ask Adesta, not Unum, for a conversion application.  (Doc. 15-2 at 29.)  Thus, McLaughlin's failure to provide Robert with a conversion application is the fault of Adesta, and of Adesta alone.  Unum bears no responsibility for McLaughlin's error.

Because Fitch has not alleged facts showing her entitlement to contract

---

[7]  The court assumes, *arguendo*, that a beneficiary's mistaken belief about the terms of an ERISA plan could, when coupled with inequitable conduct by a plan fiduciary, justify the reformation of a contract.

reformation, Count III is due to be **DISMISSED** for failure to state a claim.

    2.   <u>Equitable Estoppel</u>

Fitch essentially makes two arguments for equitable estoppel.  First, she claims that Robert became incapacitated during the conversion period and, therefore, the time to convert his coverage is equitable tolled.  Second, Fitch claims that Unum is equitably estopped from asserting Robert's failure to submit a conversion application as a defense because Unum prevented Robert from submitting the application.

    i.   *Equitable Tolling is Not Available on the Alleged Facts*

Fitch contends that the time to convert her husband's policy is equitably tolled if her husband became incapacitated during the conversion period. In *Branch v. Bernd Co.*, 955 F.2d 1574, 1582 (11th Cir. 1992), the Eleventh Circuit did toll the deadline to apply for a continuation in health insurance coverage under COBRA.  The employee in *Branch* quit his job and, ten (10) days into the sixty (60) day continuation period, was shot and slipped into a coma.  *Id.* at 1576.  The court held that, because the employee was in a coma for much of the sixty (60) day continuation period, the period was tolled during his incapacity.  *Id.* at 1582.

Even assuming that *Branch* extends to the ERISA context, Fitch's claim fails because she has not alleged any <u>facts</u> showing that Robert became

incapacitated during the conversion period.[8]  The Second Amended Complaint alleges only that Robert was terminated on April 24, 2009 and that he died on June 10, 2009.  (Doc. 34 at 2.)  Without facts establishing Robert's incapacity, Fitch cannot nudge her claim for equitable tolling into the realm of plausibility.

The court also rejects Fitch's argument for equitable tolling based on Unum's failure to give Robert notice of his right to convert his policy.  (Doc. 44 at 37.)  The Plan does not require that participants receive notice of their right to convert.  Thus, neither Unum nor Adesta had a responsibility to provide such notice.  And, even if the Plan required such notice, Robert's email to McLaughlin shows he was aware of his right to convert.

Therefore, Count IV, as it relates to equitable tolling, is due to be **DISMISSED** for failure to state a claim.

ii.   *Equitable Estoppel based on Unum's Failure to Provide a Conversion Application*

"Estoppel is an equitable doctrine invoked to avoid injustice in particular cases. . . . [A] hallmark of the doctrine is its flexible application . . . ."  *Heckler v.*

---

[8]  The court notes that Fitch submitted an affidavit with her Response to Unum's Motion for Judgment on the Pleadings (Doc. 65).  (Doc. 65-1.)  The affidavit asserts that Robert became unable to handle his affairs after he left his job.  (Doc. 65-1.)  Unum moved to strike this affidavit (Doc. 76.), and the court granted Unum's request for the reasons stated in the court's order of December 18, 2012 (Doc. 78).  Therefore, Fitch has not submitted any admissible evidence that Robert became incapacitated before the conversion period ended on May 25, 2009.

*Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59, 104 S. Ct. 2218, 2223 (1984). Still, some guiding principles are clear. *Id.* There must be a misrepresentation of fact <u>and</u> reasonable reliance by another party to his detriment. *Id.*

Fitch contends that Unum is estopped from asserting Robert's failure to submit a conversion application as a defense because Unum prevented Robert from submitting a conversion application. (Doc. 34 at 5.) The Second Amended Complaint states "UNUM misrepresented the need to file a request for conversion by failing to send a conversion application when Robert Fitch knew the premiums had been paid from his 8 week severance package." (*Id.*) The problem with this allegation is it assumes Unum had a responsibility to provide a conversion application. Yet, it is clear from the terms of the Plan that Unum had no such duty.[9] The Plan states that an employee should request a conversion application from Adesta, not Unum. (Doc. 15-2 at 29.) And, Adesta, as plan administrator, is responsible for managing and administering the plan. *See* 29 U.S.C. § 1102(a). Thus, Fitch cannot attribute Adesta's failure to provide a conversion application to

---

[9] Although Fitch did not attach the Plan to her Complaint, the Plan terms are central to her claim. Therefore, the court may consider the terms of the Plan without converting Unum's Motion to Dismiss into a motion for summary judgment. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

Unum.  Nor can Fitch establish that McLaughlin was acting as Unum's agent when she failed to provide him with an application.  *See* Part III.B.1 *supra*. Finally, Fitch has not alleged that Unum made any other misrepresentations on which Robert reasonably relied to his detriment.

Thus, Count IV, to the extent it seeks to estop Unum from asserting Robert's failure to submit a conversion application as a defense, is due to be **DISMISSED** for failure to state a claim.

### 3.    Fitch has Not Identified an Ambiguity

Count V asserts that the Plan is ambiguous and that these ambiguities must be construed against Unum.  This claim is due to be **DISMISSED** because Fitch has not identified a Plan term which is "reasonably susceptible to more than one interpretation."  *Orkin Exterminating Co., Inc. v. F.T.C.*, 849 F.2d 1354, 1360 (11th Cir. 1988); *see* Part III.A. *supra*.

### 4.    Fitch's Request for Conversion is Simply That

Count VI asserts that "[u]nder the circumstances of this case, . . . Fitch [h]as a right to request conversion of the group policy of Robert Fitch into an individual policy." (Doc. 34.)  Fitch, of course, has a right to request a conversion.  And Unum, based on the plain terms of the Plan, has the right to deny Fitch's request. Thus, Count VI is **DISMISSED** for failure to state a claim for which the court can

grant relief.

     5.    <u>Fitch has Not Alleged a Joint Breach of a Fiduciary Duty</u>

Section 1105(a) provides:

> In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
> (1)    if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2)    if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3)    if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).  Even assuming that § 1105(a) allows Fitch to seek payment of Robert's life insurance from Unum, her claim against Unum fails because she does not allege facts showing that Unum knew of Adesta's breach before the conversion period ended.[10]  Fitch contends that Adesta's knowledge is imputed to Unum because Adesta was acting as Unum's agent.  However, for the reasons discussed in Part III.B.1, Adesta was <u>not</u> Unum's agent.

_____

[10]  Indeed, the administrative record, though not considered on the Defendant's Motion to Dismiss, confirms that Unum had no knowledge of Adesta's failure until June 2009.  (Doc. 39 at 35.)

Because Fitch does not allege facts showing that Unum knew of Adesta's breach before the conversion period ended, Unum cannot be liable under § 1105(a)(3).

Fitch also does not allege facts showing that Unum concealed the breach, and Unum certainly did not knowingly participate in a breach that it is not even alleged to have known about.  Thus, Unum cannot be liable under § 1105(a)(1).

Finally, Adesta, as plan administrator, was solely responsible for providing Robert with the conversion application.  As discussed above in Part III.B.1 & III.B.2.ii, Unum had no responsibility under the Plan to provide Robert with a conversion application.  Therefore, Unum cannot be liable under § 1105(a)(2).

Because Fitch has alleged no facts which nudge her joint fiduciary duty claim into the realm of plausibility, Count VII is due to be **DISMISSED** for failure to state a claim.[11]

## IV.   CONCLUSION

For the foregoing reasons, the court finds that the Defendant's Motion for

---

[11]   Fitch filed a Motion to Compel Communications with Counsel (Doc. 64), which sought Unum's communications with counsel from August 2009.  Though the court does not reach this motion, the motion is clearly untimely as it was filed thirty-nine (39) days after the close of discovery in this case.  (*See* Doc. 13.)  Additionally, Fitch has wholly failed to explain how the requested documents, <u>which are from a period almost two months after the conversion period ended</u>, could establish that Unum breached a fiduciary duty or is jointly liable as a fiduciary.

Summary Judgment (Doc. 17) and its Motion to Dismiss (Doc. 41) are due to be, and hereby are, **GRANTED**.  Fitch's claim for insurance benefits under the Plan (Count II) is dismissed **WITH PREJUDICE**.  Fitch's other claims (Counts III–VII) are dismissed **WITHOUT PREJUDICE**.  The clerk is directed to **TERM** all other pending motions.

  **DONE** and **ORDERED** this the 19th day of December, 2012.

                    _____
                    **VIRGINIA EMERSON HOPKINS**
                    United States District Judge